**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Jonathon Carlson, | No. CV-23-00522-TUC-RM |
| Petitioner, | **ORDER** |
| v. | <u>DEATH PENALTY CASE</u> |
| Ryan Thornell, et al., | |
| Respondents. | |

Petitioner Michael Jonathon Carlson is an Arizona death-row prisoner who has noticed his intent to file a federal habeas petition under 28 U.S.C. § 2254. (Doc. 1.) Pending before the Court is Carlson's Motion to Permit Juror Contact. (Doc. 13.) The Motion is fully briefed. (Docs. 15–16.) For the reasons stated below, the Court grants the Motion.

**I.     Procedural Background**

A Pima County Superior Court jury convicted Carlson of two counts of kidnapping and two counts of first-degree murder for offenses committed in 2009. *State v. Carlson*, 237 Ariz. 381, 351 P.3d 1079 (2015). The jury found three aggravating circumstances and determined Carlson should be sentenced to death for each murder. *Id.* at 387, 351 P.3d at 1085. The court sentenced Carlson to consecutive 21-year sentences for the kidnapping charges. *Id.*

Immediately following the verdict, Carlson alleged in his state court briefing that the jurors were relieved of their admonition when the state court judge invited them into the jury room to speak with himself and the lawyers, and informed the jurors that they were

"free to discuss the case . . . with anyone. . ." (*See* Doc. 15-1, Ex. C at 4–5) (quoting RT 09/12/12 at 6).[1]

Carlson did not allege a juror misconduct claim in his direct appeal. (*See* Doc. 15 at 2; Doc. 16 at 2.) During post-conviction relief ("PCR") proceedings initiated after the Arizona Supreme Court affirmed Carlson's convictions and sentences, *see Carlson*, 237 Ariz. 401, 351 P.3d at 1099, the PCR court granted the State's motion to preclude juror contact in the absence of a showing of good cause. (Doc. 14, Ex. 1; Doc. 15-1, Ex. A.) The PCR court subsequently denied Carlson's motion for reconsideration of the order. (*Id.*, Ex. B.)

Carlson did not file a motion to contact jurors and did not raise a juror misconduct claim in his PCR. (*See* Doc. 15 at 2; Doc. 15-1, Ex. C; Doc. 16 at 2.) He did assert, however, that the PCR court should not have required a showing of good cause for contact with jurors (*id.* at 2) and that trial counsel was ineffective for failing to endeavor to speak with jurors within the timeframe permissible under Arizona rules for filing a motion for new trial based on juror misconduct. (*Id.* at 4–6.) The PCR court found the argument challenging the good cause requirement precluded and summarily denied the petition. (*Id.*, Ex. D at 2–3.)

Carlson raised the juror contact issue again in his petition for review.[2] (*Id.*, Ex. E at 83–84.) The Arizona Supreme Court denied the petition for review on October 17, 2023. (*See* Doc. 13 at 2.) Carlson's deadline for filing his federal habeas petition is September

---

[1] The state court record has not yet been transmitted to the Court; the Court relies on the exhibits attached to the parties' briefing and the facts and allegations contained therein for background purposes only.

[2] Carlson also alleged that lead counsel wrote, in an unidentified email, that after the verdict the "jurors willingly spoke" with him and one juror shared that he had been "holding up the group for most of the day," and wanted to think about whether he had been coerced and "wanted to put his thoughts on paper." (Doc. 15-1, Ex. E at 83.) Carlson asserted in his petition for review that counsel failed to follow up with this juror and that this constitutes good cause. (*Id.*) This allegation does not appear in the amendment to Carlson's PCR petition included in Respondents' exhibits, (Doc. 15-1, Ex. C), and neither party asserts that any motion for good cause based on trial counsel's email regarding this juror was ever filed in state court.

- 2 -

23, 2024. (Doc. 11.)

## II. Analysis

Carlson requests that the Court permit him to contact jurors from his trial to investigate the potential existence of any (1) extraneous, improper influence on the jury's verdicts, (2) evidence of racial animus that may have influenced the jury's verdicts, and (3) misconduct in the form of material misstatements made by a juror during voir dire or in a jury questionnaire. (Doc. 13 at 1.)

Respondents oppose the motion, arguing that: (1) Carlson is attempting to circumvent the valid State court order prohibiting juror contact absent good cause, which remains binding on him; (2) he does not attempt to meet the good cause standard or present evidence of juror misconduct; (3) any claim of juror misconduct would be procedurally defaulted but technically exhausted; and (4) the Court cannot consider new evidence developed in this habeas proceeding. (Doc. 15 at 3.)

Federal courts have long recognized that "very substantial concerns support the protection of jury deliberations from intrusive inquiry." *Tanner v. United States*, 483 U.S. 107, 127 (1987). Generally, a verdict may not be impeached on the basis of the jury's internal deliberations or the manner in which it arrived at its verdict. *Traver v. Meshriy*, 627 F.2d 934, 941 (9th Cir. 1980).[3] Rule 606(b) of the Federal Rules of Evidence, which prohibits a court from receiving testimony from a juror regarding statements made during deliberations, the effect of anything on a juror's vote, or any juror's mental processes concerning the verdict, is grounded in this common-law rule against admission of jury testimony to impeach a verdict. On the other hand, although jurors may not be questioned about their deliberations and most matters related thereto, they may be questioned regarding any extraneous influence on their verdict. *Tanner*, 483 U.S. at 117; *Traver*, 627 F.2d at 941. Accordingly, Federal Rule of Evidence 606(b) allows jury testimony in limited

---

[3] The United States Supreme Court has recognized an exception to this rule when a juror's statements indicate that racial animus was a significant motivating factor in his or her finding of guilt. *Pena-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017).

circumstances to show that (1) extraneous prejudicial information was improperly brought to the jury's attention, (2) an outside influence was improperly brought to bear upon any juror, or (3) there was a mistake in the verdict form. *See Tanner*, 483 U.S. at 121; Fed. R. Evid. 606(b).

Because jurors may not give evidence on their internal deliberations or decision, the practice of counsel in propounding questions on these subjects to jurors after trial is discouraged. *Traver*, 627 F.2d at 941. Where there has been no specific claim of jury misconduct, "there is no federal constitutional problem involved in the denial of a motion to interrogate jurors." *Smith v. Cupp*, 457 F.2d 1098, 1100 (9th Cir. 1972). However, unlike some courts that strictly prohibit all post-verdict interviews of jurors, *see, e.g.*, *United States v. Kepreos*, 759 F.2d 961, 967 (1st Cir. 1985) (prohibiting the post-verdict interview of jurors by counsel, litigants or their agents except under the supervision of the district court, and then only in such extraordinary situations as are deemed appropriate), there is no absolute prohibition of post-verdict interviews of jurors in the Ninth Circuit. *See Hard v. Burlington Northern R.R.*, 812 F.2d 482, 485 (9th Cir. 1987) (explaining that the Ninth Circuit has not joined other courts in holding that evidence acquired in post-verdict interviews conducted without leave of the court makes the evidence obtained inadmissible), *abrogated on other grounds by Warger v. Shauers*, 135 S. Ct. 521 (2014); *see also United States v. Mitchell*, 958 F.3d 775, 787 (9th Cir. 2020) (recognizing courts have discretion over lawyer's efforts to investigate and interview jurors). Though it may be "the better practice . . . for the attorney to seek leave of the court to approach the jury," the Ninth Circuit indicated that the district court could not refuse to consider the evidence obtained in that case from post-verdict juror interviews on that ground. *Id.* at 485 & n.3.

Although district courts have "'wide discretion' to restrict contact with jurors to protect jurors from 'fishing expeditions' by losing attorneys," *see United States v. Wright*, 506 F.3d 1293, 1303 (10th Cir. 2007) (quoting *Journal Pub. Co. v. Mechem*, 801 F.2d 1233, 1236 (10th Cir. 1986)), this Court's local rules do not prohibit Carlson's federal habeas counsel from contacting and interviewing jurors from Carlson's state criminal trial.

Federal Rule of Evidence 606(b) provides the rationale for this Court's local rule restricting post-verdict contact with jurors. Rule 39.2 of the District of Arizona's Local Rules of Civil Procedure provides as follows:

> Interviews with jurors after trial by or on behalf of parties involved in the trial are prohibited except on condition that the attorney or party involved desiring such an interview file with the Court written interrogatories proposed to be submitted to the juror(s), together with an affidavit setting forth the reasons for such proposed interrogatories, within the time granted for a motion for a new trial. Approval for the interview of jurors in accordance with the interrogatories and affidavit so filed will be granted only upon the showing of good cause. *See* Federal Rules of Evidence, Rule 606(b).

LRCiv 39.2(b).

However, Local Rule of Civil Procedure 39.2(b) does not apply to Carlson. The language of LRCiv 39.2(b), which provides that proposed interrogatories must be submitted to the Court "within the time granted for a motion for a new trial," indicates that the rule was drafted to govern contact with federal jurors following trials in federal district court. This conclusion is strengthened when the rule is read together with Local Rule of Civil Procedure 39.1, which governs the procedure for trial by jury in federal district court. *See* LRCiv 39.1.

Respondents assert Carlson does not attempt to meet the good cause standard or present evidence of juror misconduct. Though a habeas petitioner is not entitled to discovery "as a matter of ordinary course," *Bracy v. Gramley*, 520 U.S. 899, 904 (1997), "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." Rule 6(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254. However, because Carlson is not currently requesting formal discovery, Rule 6(a) does not restrict Petitioner's informal interviews of jurors. *See e.g.*, *Ellison v. Ryan*, No. CV-16-08303-PCT-DLR, 2017 WL 1491608, *3 (D. Ariz. Apr. 25, 2017) ("federal habeas counsel is not required to show good cause prior to informally interviewing jurors from Petitioner's state criminal trial."); *see also Harrod v. Ryan*, No. CV-16-02011-PHX-GMS, 2016 WL 6082109, *3 (D. Ariz. Oct. 18, 2016)

("Furthermore, requiring Petitioner to show good cause before interviewing jurors, who in some instances may be the only source of evidence of extraneous misconduct, presents a Catch-22 situation that is better addressed through evidentiary rules and ethical considerations.").

Moreover, requiring evidence of misconduct as a prerequisite to the authorization of post-verdict interviews of jurors creates an almost insurmountable hurdle that prevents criminal defendants from discovering constitutional error and raising potentially meritorious claims in habeas proceedings. The Court takes note that the rules restricting lawyers' access to jurors are intended to "(1) encourage freedom of discussion in the jury room; (2) reduce the number of meritless post-trial motions; (3) increase the finality of verdicts; and (4) further Federal Rule of Evidence 606(b) by protecting jurors from harassment and the jury system from post-verdict scrutiny." *See Mitchell v. United States*, 958 F.3d 775, 787 (9th Cir. 2020). Juror testimony, however, is potentially the only evidence of some instances of juror misconduct. Precluding an attorney from interviewing jurors may limit the possibility of uncovering any impropriety, which in turn may inhibit a defendant's right to a fair trial.

Additionally, as one court recently observed, the "United States Supreme Court has consistently stressed the need for reliability in capital cases." *Florida v. Daily*, 2019 WL 8219875 (Fla. Cir. Ct. Oct. 8, 2019) (citing *Lowenfield v Phelps*, 484 U.S. 231, 238–9 (1988)). Cases in which a death warrant has been signed provide "the most compelling reason for granting juror access." *Id.*

Finally, contrary to Respondents suggestion, it would be premature for the Court to fully analyze the procedural default and evidentiary considerations at this stage of the proceeding before any claim or request for evidentiary development has been filed, much less fully briefed. Further, having determined that it is appropriate to exercise its discretion to permit juror contact, the Court does not reach Carlson's allegation that barring juror contact would improperly burden his right of free speech and access guaranteed by the First Amendment. "A fundamental and longstanding principle of judicial restraint requires that

courts avoid reaching constitutional questions in advance of the necessity of deciding them." *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445-46 (1988) (citations omitted). Moreover, Carlson's First Amendment argument is waived as it is mentioned only in passing and unsupported by legal argument. *See United States v. Stoterau*, 524 F.3d 988, 1003 n.7 (9th Cir. 2008) (finding general contentions mentioned only in passing, and unsupported by meaningful argument, were waived); *see also Evans v. Skolnik*, 997 F.3d 1060, 1070 (9th Cir. 2021) ("[W]e should not address an avoidable constitutional issue when the briefing is inadequate.").

In conclusion, the Court exercises its discretion to permit habeas counsel to informally interview jurors from his state criminal trial, without the necessity of first demonstrating good cause, for the limited purposes of determining whether they were exposed to extraneous information, expressed racial animus during the proceedings, or made material misrepresentations in voir dire or on a jury questionnaire.[4]

Accordingly,

. . . .

---

[4] The Court agrees with Carlson that the state court's decision does not limit the Court's exercise of its discretion to allow juror contact. The Court, however, takes no position on whether Carlson remains bound by the state court's decision and whether he or his counsel would be in violation of ethical rules or the state court's order should habeas counsel choose to interview the state court jurors from Carlson's trial, as this issue is not presently before the Court. *See Pena-Rodriguez*, 580 U.S. at 209 ("The practical mechanics of acquiring and presenting such evidence will no doubt be shaped and guided by state rules of professional ethics and local court rules, both of which often limit counsel's post-trial contact with jurors."); *see also* Local Rule of Civil Procedure 83.2(e) (Arizona rules of ethics applicable to counsel practicing before this court); Ariz. R. Sup. Ct. 42, E. R. 3.5 ("E.R. 3.5") (a lawyer "shall not . . . communicate with a juror or prospective juror after discharge of the jury if . . . the juror has made known to the lawyer a desire not to communicate; or . . . the communication involves misrepresentation, coercion, duress or harassment."); Ariz. R. Sup. Ct. 42, E.R. 3.5, 2003 cmt 3. (Counsel "may on occasion want to communicate with a juror . . . after the jury has been discharged . . . and may do so unless the communication is prohibited by law or a court order but must respect the desire of the juror not to talk with the lawyer," and "may not engage in improper conduct during the communication.").

**IT IS ORDERED** Carlson's Motion to Permit Juror Contact (Doc. 13) is **GRANTED** for the limited purposes requested.

Dated this 2nd day of August, 2024.

_____
Honorable Rosemary Márquez
United States District Judge